NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X
In re:

                                                       Chapter 11

KARA HOMES, INC., et al.,                         Case No: 06-19626 (MBK)

                                                       Administratively
                                                       Consolidated Proceedings

           Reorganized Debtors.
--------------------------------------------------------X

**APPEARANCES**

Heidi J. Sorvino, Esq.
Beth N. Kibel, Esq.
SMITH, GAMBRELL & RUSSEL, LLP
250 Park Avenue, Suite 1900
New York, New York 10177
Attorneys for Sheldon Good & Company
Auctions Northeast, LLC and DJM Asset
Management LLC

Ben H. Becker, Esq.
Stacey L. Meisel, Esq.
BECKER MEISEL LLC
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 2800
Livingston, New Jersey 07039
Attorneys for Maplewood Homebuilders and the
Reorganized Debtors

**MICHAEL B. KAPLAN, U.S.B.J.**

                                                                      **OPINION**

**I.     INTRODUCTION**

At issue in this matter is whether the Reorganized Debtors are responsible for payment of certain marketing expenses, disbursements and legal fees, as administrative expenses pursuant to 11 U.S.C. §503(b), incurred by Sheldon Good & Company Auctions Northeast, LLC ("Sheldon Good") and DJM Asset Management, LLC ("DJM") (Sheldon Good and DJM shall be collectively referred to herein as "Claimants") in the course of engagement as real estate professionals during the Chapter 11 proceedings. For the reasons set forth below, this Court will sustain the objections put forward by the Reorganized Debtors and disallow in their entirety Claim Nos. 986-989, 992 and 993. In addition, Claim No. 990 will be reduced and allowed as an administrative claim in the amount of $7,350.00 and Claim No. 991will be reduced and allowed as an administrative claim in the amount of $15,330.00.

**II.    JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

2

### III.    FACTS AND PROCEDURAL HISTORY

1. Kara Homes, Inc., one of the Reorganized Debtors[2], and numerous other related and affiliated entities (including, but not limited to, other of the Reorganized Debtors) filed separate petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on October 5, 2006, and on other dates thereafter. Pursuant to various Orders, all of these related cases are jointly administered under Lead Case No. 06-19626 (MBK).

2. On June 28, 2007, Kara Homes, Inc., and other Reorganized Debtors filed the Master Plan of Reorganization ("Master Plan").

3. On September 26, 2007, the Court entered the *Findings Of Fact, Conclusions Of Law And Order Confirming First Amended Master Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code* (the "Master Plan Confirmation Order").

4. The Master Plan became effective on or about October 1, 2007 (the "Effective Date").

5. Sheldon Good is a fully owned subsidiary of a major domestic real estate auction company. DJM is a worldwide provider of strategic real estate solutions.  On January 29, 2007, this Court entered an order (the "Retention Order") authorizing the retention of Claimants as professionals of the Debtors. Specifically, Claimants were retained as the exclusive real estate consultants to the Debtors with respect to the marketing and sale of certain designated properties owned by the Debtors in accordance with the terms and conditions of the Agreement for Services (the "Agreement").

---

[2] The Reorganized Debtors are Kara Homes, Inc., Bergen Mills Estates, LLC, Country Club Estates by Kara, LLC, Horizons at Woodlake Greens,  LLC, Kara at Buckley Estates, LLC, Kara at Hawkins Ridge, LLC, Kara at Mt. Arlington II, LLC, Kara at Navesink, LLC, Kara at Orchard Meadows, LLC, Kara Homes Development LLC, Kara Service Co. LLC, Winding Run Estates by Kara, LLC and The Landings at Manahawkin, LLC. The Reorganized Debtors exist pursuant to the Master Plan (as such term is defined herein).

3

6.      Pursuant to the terms of the Agreement, Claimants seek payment for marketing expenses, disbursements, and legal fees incurred in connection with the sale or transfer of certain properties that were not reimbursed by the Debtors. Claimants also contend that they are entitled to commissions earned in connection with the sale of real estate owned by Kara at Lacy, LLC, Kara at Freehold, LLC and Kara at Dayna Court, LLC.

7.      Sheldon Good and DJM collectively filed various proofs of claims in the main Kara Homes, Inc., bankruptcy case. Specifically, on or about August 17, 2007, Claimants timely filed eight proofs of claim, numbered 986 through 993, against the Debtors (collectively, the "Claims"). Each proof of claim asserts a § 503 administrative expense claim for post-petition services. In this regard, with respect to Claims 990 and 991, Claimants seek the following amounts due, as discussed in detail below: (i) $7,350 for commissions earned in connection with the sale of real estate owned by Kara at Lacey; (ii) $15,300 for commissions earned in connection with the sale of real estate owned by Kara at Freehold; and (iii) $55,777.74 for marketing expenses, disbursements, and legal fees. With respect to Claims 986 through 989 and Claims 992 through 993, Claimants seek $243,297.43 for marketing expenses, disbursements, and legal fees.

8.      Pursuant to a settlement agreement by and among the Debtors, Bank of America, N.A., the Claimants, and Teresa Cueva, Claimants allege they are entitled to an administrative claim of $7,350 for commissions earned in connection with the sale of certain real estate owned by Kara at Lacy, LLC, and are also entitled to an administrative claim of $15,330 for commissions earned in connection with the sale of certain real estate owned by Kara at Freehold, LLC.

9. The terms of the settlement agreement were memorialized in a consent order filed with the Court on August 17, 2007 (the "Consent Order") [Doc. No. 27671, which resolves certain claims to the proceeds of the sale of certain assets of the Debtors.] Paragraph 1 of the Consent Order provides as follows:

> 1. [Claimants] shall receive from the remaining proceeds of the Lacey Sale and the Freehold Sale $52,920 representing 70% of the aggregate Buyer's Premiums arising from the Lacey and Freehold sales (the receipt of which is hereby acknowledged by [Claimants]), and the remaining 30% of the aggregate buyer's premium shall be allowed as an administrative expensive claim in the Lacey case to the extent of $7,350.00 and in the Freehold case to the extent of $15,330.00 together with a reimbursement for such marketing expenses to which [Claimants] may be entitled in the Lacey and Freehold Cases under [the] Agreement.

10. With respect to the payment of expenses, the Agreement, which refers to the Claimants as the "Joint Venture" or "JV", provides in Section III.:

> A. The JV shall not be responsible for any transactional costs and/or legal expenses incurred by the Debtor in connection with the Properties, his retention of the JV, or the approval of this Agreement.
>
> B. The Debtor will reimburse the JV for its reasonably incurred marketing expenses, disbursements and legal fees in connection with the sale or other transfer of the Properties (the "JV Expenses"). The JV Expenses shall not exceed, in the aggregate, the amount set forth in a written budget to be approved in writing by the parties in the exercise of their reasonable discretion after the JV completes its inspection of the Properties. **For purposes of reimbursement to the JV hereunder, all JV Expenses shall be evenly allocated among the Properties listed on Exhibit A.** Reimbursement by the Debtor to the JV of the JV Expenses may include a ten percent (10%) variance of the budget. The JV shall advance all such JV Expenses and shall be reimbursed therefore from the net proceeds above all liens of the sales or other transfers of Properties, provided, however, that the Debtors' obligation to reimburse the JV for JV Expenses as to a particular Property shall arise only if net proceeds are realized and, in such event, shall be limited to the lesser of the JV Expenses allocated to that Property and the net proceeds. Reimbursement of JV Expenses, if required, shall be payable within ten (10) business days of the JV's written request for payment of the JV Expenses. The JV reserves the right to file an administrative claim for any JV Expenses not reimbursed by the Debtor. (emphasis in the original).

5

11.  On or about May 13, 2009, the Reorganized Debtors filed the *Sixth Omnibus Motion for Entry of an Order Disallowing Administrative Claims, Secured Claims and Priority Claims and for Related Relief Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007* (the "Sixth Omnibus Claims Motion").

12.  On or about August 3, 2009, counsel for the Claimants filed an *Objection* to the Sixth Omnibus Claims Motion (the "Objection"). On or about August 17, 2009, counsel for the Claimants filed corrected exhibits to accompany the Objection.  Subsequent to the filing of the Claims Motion, the Reorganized Debtors withdrew any objection to the commissions owed to Sheldon Good and DJM under the Consent Order, identified by Docket No.2767 and consented to allowing Sheldon Good and DJM an administrative claim in the total amount of $22,680.00, as provided for under the Consent Order. No resolution was reached with respect to the remaining portions of the Claimants' § 503 administrative claims.

13.  On October 5, 2009, this Court heard oral argument of counsel and reserved decision.

**IV.  DISCUSSION**

Both parties to the within dispute seem to agree that pursuant to the unambiguous language of Section III(B) of the Agreement, had there been sufficient net proceeds from the sale of the subject properties, Claimants were entitled to be reimbursed by the Debtors for Claimants' reasonably incurred marketing expenses, disbursements and legal fees in connection with the sale or other transfer of the properties.  This is where the consensus ends, for both parties draw the Court's attention to language in Section III(B) in support of their respective arguments relative to whether Claimants are entitled to be reimbursed for such expenses.

6

Claimants contend that even if no net proceeds were realized, Section III (B) expressly provides that Claimants "reserve[] the right to file an administrative claim for any JV Expenses not reimbursed by the Debtor." Consequently, Claimants argue that the Agreement contemplates reimbursement for their marketing expenses, disbursements, and legal fees in connection with the sale of the properties - either immediately if net proceeds were realized from the sales, or as an administrative claim should no net sale proceeds be realized. In contrast, the Reorganized Debtors submit that it is palpably clear from the language found in Section III(B) that such reimbursement would only be available as an administrative expense in the event there was net equity from the sale of the underlying properties. Pertinently, the Reorganized Debtors rely on the following provision:

> the Debtors' obligation to reimburse [Sheldon Good and DJM]
> for [Joint Venture] Expenses as to a particular Property shall arise
> only if net proceeds are realized and, in such event, shall be limited
> to the lesser of the [Joint Venture] Expenses allocated to that
> Property and the net proceeds."

*See* Agreement at page 6, attached as Exhibit A to Response of Reorganized Debtor. The Reorganized Debtors further submit that the right to file an administrative claim, as provided in the Agreement, was intended only to address a situation in where the net proceeds from the sale of a property were not paid over and made available to satisfy sale-related expenses. The task before the Court is to reconcile these provisions in such fashion as to honor the intent of the parties at the time the agreement was reached.

The Agreement does not specify a choice of law governing any disputes under the Agreement. The parties have, however, agreed that "any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this agreement or the JV's services hereunder, shall be subject to the exclusive jurisdiction of the United States Bankruptcy

7

Court for the District of New Jersey, Trenton Vicinage." Agreement, Section IV, Paragraph H, page 9. Given the nexus between the Agreement and the case pending in New Jersey, as well as the location of the underlying properties, this Court will apply New Jersey contract law where appropriate to resolve the dispute. The primary principles of contractual construction are straightforward. The court makes the determination whether a contractual term is clear or ambiguous. Schor v. FMS Financial Corp., 357 N.J. Super. 185, 814 A.2d 1108 (App. Div. 2002). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations[.]To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their 'plain and ordinary meaning'." Nester v. O'Donnell, 301 N.J. Super. 198, 210, 693 A.2d 1214 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993).

In the present matter, the last sentence of Section III (B) of the Agreement, "[t]he JV reserves the right to file an administrative claim for any JV Expenses not reimbursed by the Debtor[]", taken in isolation, lends support to Claimants' argument. Yet, Claimants' proffered conception of the agreement is wholly inconsistent with the rather clear language preceding this sentence, "… JV Expenses as to a particular Property shall arise only if net proceeds are realized and, in such event, shall be limited to the lesser of the JV Expenses allocated to that Property and the net proceeds." The record before the Court allows for only one finding with respect to the existence of "net proceeds"—that each project for which Claimants seek to recover marketing expenses, disbursements and legal fees – Kara at Lacey, LLC; Kara at Freehold, LLC; Kara at Dayna Court, LLC; Hartley Estates by Kara, LLC; Sterling Acres at Monroe, LLC; Kara at Park Ridge Estates, LLC; Woodland Estates at North Edison, LLC; and Kara at Monroe, LLC – failed

8

to generate net proceeds from which to pay these expenses. With no net proceeds, no obligation to reimburse arises and, thus, the Reorganized Debtor cannot have an obligation to pay administrative claim(s) for such expenses.[3]

"Courts faced with allegedly conflicting provisions in contracts are repeatedly cautioned to be slow in reaching a result which invalidates contractual provisions, but to instead strive where possible to interpret contracts in a manner which harmonizes and gives effect to all of their provisions. See Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1139 (3d Cir. 1995) ("Cardinal rule in contract interpretation is that effect must be given to the intention of the parties and to all provisions in the agreement"); see also In Re Sugarhouse Realty, Inc., 192 B.R. 355, 365 (E.D.Pa. 1996) ("Courts must read provisions of contract so as not to conflict with each other")." In Re New Knight, 291 B.R. 367 (Bankr. E.D.Pa. 2003). In the view of this Court, the interpretation of Section III (B), offered by the Reorganized Debtors, sensibly harmonizes the competing provisions; to wit, Claimants' entitlement to file an administrative claim was intended by the parties solely to permit a claim to be asserted in a situation where the net proceeds from the sale of a property, for whatever reason, were not paid over. An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect. See Capitol Bus Co. v. Blue Bird Coach

---

[3] Allowances for administrative expense claims are "narrowly construed for [the] proper protection of other creditors." In re G-I Holdings, Inc., 308 B.R. at 202, quoting In re Molnar Bros., 200 B.R. 555, 558 (Bankr. D.N.J. 1996). 16. As with any administrative expense claim, the claimant bears the burden of proving entitlement to an administrative expense and must do so by a preponderance of the evidence. In re G-I Holdings, Inc., 308 B.R. at 202. Notwithstanding the questions raised by Claimants in their Objection as to the possibility of their indeed having been "net proceeds" from the Lacey and Freehold sales, Claimants herein have not on this record satisfied their burden to establish the existence of "net proceeds", thus entitling them to recovery of their requested administrative expenses. However, inasmuch as the Reorganized Debtors acknowledge that the Agreement contemplated the allowance of JV administrative expenses in the Lacey and Freehold cases where there were "net proceeds", yet for whatever reasons the reimbursements of JV expenses went unpaid, the Court will permit Claimants thirty (30) days to supplement the record with admissible evidence as to the realization of such "net proceeds" from the Lacey and Freehold sales, as well as itemized documentary support for any claimed **marketing expenses incurred with respect to those sales** (pursuant to the August 17, 2007 Consent order). In the event of such submission, the Reorganized Debtors will have fifteen (15) days to file any objections and the Court will schedule a hearing thereon.

Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973) ("A contract is to be considered as a whole, and, if possible, *all its provisions should be given effect*.... ") (emphasis added). The Court's construction of Section III(B) hews to the aforementioned mandate to give effect, where possible, to all terms in an agreement.

**VI.    CONCLUSION**

For the reasons set forth above, the Court sustains the objections put forward by the Reorganized Debtors.[4] An appropriate Order will be entered by the Court.

Dated: November 20, 2009

                                                                     *[signature]*
                                                      Honorable Michael B. Kaplan
                                                      United States Bankruptcy Judge

---

[4] Note the provision for a supplemental submission by Claimants and a hearing thereon, if necessary, as discussed in Footnote 3.